May it please the Court, Carol Dvorkin representing petitioners Irma Vicente-Omar and Mariela Matute-Calderon. In this case, the issue is whether the Board of Immigration Appeals improperly held that a particular social group of abandoned Salvadoran children with no means of support who are targeted by unscrupulous employers is not a cognizable particular social group. The Court gives Chevron deference to the Board where binding agency precedent is on point. The government argues that Ramos-Lopez v. Holder applying the Board's decision in a matter of SEG is on point. I disagree. Under SEG, for a particular social group to be cognizable, the petitioner must demonstrate particularity and social visibility. This case can be differentiated from Ramos-Lopez. In that case, the Court upheld, this Court upheld the EIA's determination that Salvadoran youth who resisted MS-13 gang recruitment was too large and diffuse a segment of society, and that the particular social group was therefore too broad to qualify as a cognizable one. So what makes this case different? In that case, the Court held there was no unifying characteristic to narrow the group definition. In this case, the particular social group is not as large a potential group as those who refuse to be inducted into a gang. How do we know that? The young people in El Salvador who are approached by gangs may be from any level of society. They may be poor. They may be middle class. There may be many reasons why they would either be lured or be threatened by gangs. Most children in El Salvador do have parents or some kind of family who can support them. How do we know? And where is this in the record? Well, I can't point to a specific place. I would say that that's general knowledge. The Court should take administrative notice. The gang resistors, as I said, may come from different classes. The unifying characteristic in this case that narrows the group has three main elements, poverty, minority, and lack of family support. Do we have any sense of the size of that group? It seems to me in a country like El Salvador where poverty is so widespread that it could be a very large group. Indeed, there are many poor people in El Salvador. However, the group is narrowed by the fact that even though poor, most children do have some family who may at least support to some extent or protect them so that they are not utterly abandoned and destitute. How is this different, though, from cases that have attempted to base a social group on, for example, street children in countries like El Salvador, which seems similar to what you are articulating? They are poor, they're minority, and they lack family support, and yet courts have said that groups such as children who must live on the street in poor countries don't qualify. Yes, and this Court did make such a holding in an unpublished decision which the government has cited. How is that different? Of course, Cruz v. Holder. In that case, the Court did hold that minority is not an immutable characteristic. Well, I guess my question is a little bit different. It's how is what you're proposing, which you've just told us is defined by poverty, minority, and lack of family support, how is it different from the group that this Court has rejected in the unpublished decision? In that decision, the Court did hold that there's no evidence that young Honduran male gang resistors are generally visible. And one ground. And in this case, destitute children are clearly visible because of their, you know, their state. Also, a state of poverty. That decision also held that Honduran street children might be able to relocate. And in this case, there is, there are unscrupulous employers all over El Salvador. The real difference here is that in El Salvador, these young children are specifically targeted by unscrupulous reporters in the sugarcane industry and in other areas as well. That was not an issue in the Flores case. Sotomayor I had thought your argument in your brief was that the Hobson's choice facing these children was either to live on the street and be part of the group that, if they lived in Honduras, would not qualify in the circuit, or to go work in cruel conditions for children. So, again, I'm back to my question. If that's the choice and it's defined by having to be on the street, how is it different from Honduran street children? It is defined not only by being on the street, but by the fact that there are these employers who do target. There isn't any evidence in the Flores case or other cases of which I'm aware that reach the issue of the employers who target these children, rather just that these children are poor and nobody's taking care of them and they may be vulnerable in general to crime and mistreatment by the government, perhaps. Thank you. Do I reserve some time for rebuttal? You have about three minutes. I would like to just address one more issue. Please go ahead. With regard to minority, in Flores Cruz, the Court held that minority is not immutable because eventually one ages out, if one survives, of course. And I believe that, first of all, this Court is reviewing the decisions of the IJ and the BIA, not considering what the circumstances or age of the petitioners are now. And it's my belief that if the Court did find that the IJ or the BIA was incorrect, then the Court should probably remand and let the lower courts decide whether or not the changed circumstances have anything to do with respondents' eligibility. Secondly, while one is a minor, there is no possibility of changing that characteristic. How do you deal with the fact that your client was 20 at the time of the hearing? Yes, she was 20. The other two children were 9 and 7, I believe. I'd have to double-check. But she was the only one who testified. She was the only one who testified, yes, because they were very young. And in my view, it would be the height of cynicism, frankly, to take the view that children like petitioners should just wait. No, I agree with you on that, but in this particular case, your client was no longer fit the social group definition at the time of the hearing. At the present time. Right. But you've conceded that you don't have past persecution, so you're talking about well-founded fear of future persecution. With regard to this particular issue, yes. With regard to the particular social group issue, yes. She's of the aging majority now. Why do you think that she has a well-founded fear based on a social group to which she's not a member? Again, my point is that this Court is reviewing the decision made at the time. And again, if the Court finds that the decision was not proper, the case should be remanded for the lower court to decide whether or not there's any difference now that the children are older. That's a – that seems to me clearly the proper thing to do, just as the Court, which finds someone has established past persecution or a well-founded fear in a case where the country conditions may have changed over the years since the case was originally filed. Typically, the case is remanded for lower courts to determine whether the circumstances have changed sufficiently to negate the basis for eligibility of asylum. Very good. Your time has expired, sir. Thank you. We'll hear from the government. May it please the Court. I'm Sarah Long, representing the Attorney General of the United States. This Court should deny the petition for review as substantial evidence supports the nor do any of the petitioners have a well-founded fear of future persecution in El Salvador. First off, the decision I'll review is the Board's decision. When the government moved to remand, the Board conducted a de novo review of the record and issued its own independent decision after reviewing it. So it's just the Board's decision that is before this Court. Regarding past persecution, there is no evidence that the lead petitioner I don't think she's arguing past persecution in this case. There is some argument, but I can move on to the well-founded fear based on the particular social group. I mean, as I interpret the brief and the argument today, the argument is based on well-founded fear of future persecution. The focus of the argument is whether or not this is a social group that's cognizable. And the BIA said it wasn't. Is that the way you see it? The petitioner made multiple arguments in her brief, one of which was that the lead petitioner had established past persecution. But I can focus my argument on the well-founded fear argument. The record also does not support this social group of children who have no means of support in a country which does not support, protect them from abusive employers and torturous labor conditions. There are multiple problems with this group. First off, there are no It does not contain an immutable characteristic. Poverty What is an age immutable characteristic? I think I find it odd to think that the BIA would say it's not immutable because you grow out of it. I think that is a bit, to use your opponent's words, cynical. Well, age is not fundamental to identity, and as is evidence in this case where currently none of the petitioners would be considered children. And this is a well-founded fear argument. So looking at petitioners now, they do not even belong in this group. But we have looked at other cases. I'm thinking about Somalia cases where we found young girls in Somalia constituted a social group. Yes. And that was an age-related characteristic, correct? Correct. So what's different on the age issue in this case from that case? Well, because you can age out, and I agree it can be cynical. Well, young girls in Somalia grew up, too. Right. And they were part of that group when they were in Somalia. Once they've moved out of the group, they are no longer members, and subject to persecution because of FGM as young Somali girls. But during the time, sort of a separate issue, whether they have left the group or whether while they are in the group, it is a group that shares an immutable characteristic that is of the helplessness of childhood. Right. And the board has said that past experiences as a child can be considered in social group analysis. And so in this case, past... But you can't change your age. Yes. I mean, time may change your age. Time is a fire in which we burn, as they say. But it's immutable in the sense that none of us can do anything about our chronological age. Well, and that is not the only part of this social group that is a problem. Even if we look at poverty, we look at the lack of means of support, those, too, are not immutable. And, again... No, perhaps not. But isn't that sort of a Horatio Alger view of poverty in the third world? I just find it a bit odd, especially without any evidence in the record, for the VIA to conclude, well, you can always get richer. Yes, Your Honor. But the VIA also focused on the lack of particularity with this group as well, which is another factor that this Court has recognized when looking at whether or not a social group is cognizable under the Act. And these same words, poverty, unscrupulous employers, or abusive employers, have no defining factors. We're not sure what is poverty, what is the limit of poverty, who we characterize. We're unsure of what fields of employment. There's some focus on sugarcane, excuse me, the sugarcane industry. There's also evidence in the record of domestic employment. And so we've become to just include all impoverished children in El Salvador in this social group. There's no outer boundaries. So as this Court has said, it's too broad and too amorphous for it to constitute a particular social group. Also, the evidence in the record does provide some statistics for maybe how large this group could be. Human Rights Watch says that in El Salvador about 5,000 children work in the sugarcane field, and another 25,000 are indirectly involved. And so then also, what would this group include? Would it be the children who do work in the sugarcane field? Is it the children who are indirectly involved? It becomes too large of a group to be cognizable under the Act of a particular social group. And so for those reasons, Petitioners 1, did not establish that there is a social group, and 2, did not establish that they would be members of this social group. How important is it for your argument that the lead petitioner had, in fact, aged out at the time of the hearing? It's very important because, again, as I've said, it is a well-founded fear. So she cannot present a well-founded fear based on this social group, on account of this social group, to which she's not even a member of. And the remaining children who also have aged out now, also it's questionable whether they would have fallen into this social group regarding the lack of means of support. There is testimony in the record that their mother was living in the United States and sent money back. Currently, both parents live in the United States and would have. But didn't the BIA didn't cite that fact in the decision? No, they did not. That was just one of the arguments we promoted. I understand the argument by the BIA or the holding that a social group may lack definition. But I'm not sure I understand the logic based on the size of the group alone. Can you explain that to me? Because let me explain my concern. I mean, let's take the traditional elements on account of claim. Politics, religion, we have religions that have millions and millions of members throughout the world. Yet with social group, BBI seems to reference size, where size makes absolutely no difference on the traditional elements. Can you explain to me why size should be a limitation alone on a definition of a social group? I'm not sure if I articulated that correctly then. Size, right, this Court has said size alone is not a reason not to find a particular social group. I believe in Perdomo. But in this case, the fact of the size within that group, there's no defining characteristics. And so because of its size, with religion, you have, you know, a religion where people are fine. I understand the lack of definition, but you talked about with their 5,000 people or kids working in the fields, and that's just too large. But that doesn't really make much sense to me in the context of looking at, say, religion where you have hundreds of millions of people. I didn't mean that as that's too large. I meant that when you compare that between the direct number of people, the statistics showing direct number in the field and those indirectly involved by this industry, that the ebb and flow of who is working in the industry and who is not working in the industry, the numbers can change. And so this group itself cannot be defined. I'm focusing on the definition of the group instead of the size. And I apologize for misstating that piece. And so if the Court has no more questions, I will. Judge Fletcher, do you have any questions? No. It's a puzzling case. All right. Thank you for your arguments. Thank you both. The case just heard will be submitted for decision, and we'll proceed to argument on United States v. Fierro-Vanegas.
judges: Rosenthal, Fletcher B. , Thomas